***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Taylor and the briefs and arguments of the parties. The parties have not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award, except with minor modifications.
 ***********
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing as: *Page 2 
 STIPULATIONS
1. All parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction over this matter.
2. All parties are subject to and bound by the North Carolina Workers' Compensation Act.
3. All parties have been properly designated, and there is no question as to joinder or non-joinder of parties.
4. Plaintiff sustained an injury arising out of and during the course of his employment on October 27, 2007, when he was working at Carter Finley Stadium during a football game. The horse he was riding ran under a guide wire, striking the employee's left hand and severing his left thumb.
5. Plaintiff is employed by defendant Town of Garner as a police officer. He has been employed for 19 years.
6. On September 29, 2007 and October 27, 2007, plaintiff worked as a mounted officer. He was paid $30.00 per hour for 12 hour shifts.
7. The parties filed a Prehearing Agreement containing jurisdictional stipulations and admitting into evidence a June 21, 2007 mutual assistance agreement between defendants N.C. State and Town of Garner, Commission forms, employment records, and medical records as Stipulated Exhibits 1 through 5. Police department regulations were entered into evidence at the hearing as Plaintiff's Exhibit 1, and plaintiff's tax returns were entered into evidence as Defendant Town of Garner's Exhibit 1. *Page 3 
8. Defendant Town of Garner is an insured employer. The North Carolina League of Municipalities is the carrier for the claim.
9. Defendant North Carolina State University is a self-insured employer. Key Risk is the claims administrator for the claim.
 ***********
Based upon the most competent, credible evidence of record, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. John Taylor is 50 years old. Although he had previous employment at a funeral home and for the North Carolina Department of Corrections, among others, he has worked as an officer for the Town of Garner Police Department since September 11, 1989.
2. Officer Taylor has served as a training officer as well as a patrol officer. He achieved a First Class ranking and has received positive job evaluations. In 1997, he received a commendation from the Federal Bureau of Investigation for the apprehension of a federal fugitive.
3. The Garner Police Department encourages community involvement for all of its police officers. The Town encourages service projects, including child seat clinics, child I.D. clinics, and other projects. Officers are evaluated on their participation in community service and required to participate in self-study service projects, for which they are required to train and document hours spent.
4. In January 2007, Officer Taylor and Inspector Cathy Wood began organizing a mounted patrol division for the Town of Garner. Officer Taylor, who lives on a farm and owns horses, worked with Inspector Wood and Officer Rodney McGee in order to develop guidelines and training protocols for the horses and officers. In his subsequent evaluations, Officer Taylor was specifically commended for establishing the mounted patrol. *Page 4 
5. Chief Thomas Moss and Deputy Chief Eric Copeland gave approval for the volunteer unit and appropriate regulations for the unit were adopted. The Town provided the unit with equipment and uniforms, and the Town provided insurance for any damage caused by the horses. The officers provided the horses and for the care and upkeep of the animals. Officer Taylor provided a horse for Officer Wood's use, as well as the trailer used in transporting the animals.
6. A horse must undergo many hours of training in order to be used on the mounted patrol. The horse must be desensitized to possible distractions, including crowds and unexpected noises. Officer Taylor and other officers involved in the Garner Mounted Patrol participated in training on March 8, 2007 at N.C. State University with twelve or more other mounted patrol units from other departments and agencies in North and South Carolina.
7. Officers from the Town of Garner's Mounted Patrol and officers from N.C. State Mounted Patrol were part of a public service day for the Town of Garner in May 2007. The officers received positive feedback for their work from the public and the department. The mounted patrol program generated good press for the department and even additional donations.
8. The mounted patrol worked at the Lake Benson celebration on July 3, 2007. Officer Taylor and other mounted officers helped to control the crowd and to ensure access and egress from the event.
9. Officer Taylor was asked to work mounted patrol for Garner Magnet High School on two occasions for home football games in September 2007. Officer Taylor completed a secondary employment form and submitted it for approval to his sergeant. The form was approved by Sergeant Mike McIver on September 18, 2007 and by Chief Moss on September 24, 2008. Officer Taylor worked a total of eight hours and was paid $25.00 per hour for his service. *Page 5 
10. Secondary employment by officers in the Garner Police Department is highly regulated. Officers are required to submit applications for secondary employment to their direct supervisors, who then submit the forms to the Chief for final approval. The forms usually are submitted prior to beginning the employment; if necessary, forms may be submitted afterwards, so long as verbal authorization has been given.
11. There are two types of secondary employment: off duty employment and extra duty employment. Off-duty employment is employment that does not require or contemplate the use of law enforcement powers, and is allowed when it does not interfere with official service. In contrast, extra duty employment is employment that will or may require the use of law enforcement powers. Extra duty employment is allowed only within the jurisdiction of the Town of Garner's police department; it is specifically prohibited outside the jurisdiction of the police department.
12. By statute, police officers have no more than one mile of extra territorial jurisdiction, or jurisdiction outside the city limits of the municipality in which they are sworn. The Town of Garner has a special provision, passed in 1963, which allows jurisdiction of up to three miles outside the Town of Garner city limits, but only one mile into the City of Raleigh. There is no jurisdiction for the Town of Garner police department on the campus of N.C. State University.
13. Officers who work as sworn law enforcement officers in other jurisdictions must do so pursuant to mutual aid and assistance agreements between the cooperating agencies. At the specific request of Inspector Wood, the Town of Garner and N.C. State University's police chiefs, Chief Younce and Chief Moss, entered into a mutual aid and assistance agreement in June 2007. Chief Moss signed the agreement on June 13, 2007, and Chief Younce signed the *Page 6 
agreement on June 21, 2007. Inspector Wood presented the Chiefs with the agreement for the express purpose of protecting mounted patrol officers when they worked at N.C. State.
14. Officer Andrea Foor discussed the possibility of the Town of Garner's mounted patrol officers working with her at N.C. State's football games with her chief, Tom Younce. Officer Foor is one of two mounted patrol officers at N.C. State. Mounted patrol officers work during football games, where upwards of 60,000 people can attend. Some forty thousand people congregate in the parking lots abutting the stadium.
15. Mounted patrol officers have several advantages over officers who patrol on foot or officers in vehicles. Mounted patrol officers sit high enough to have an improved vantage point and can cover ground quickly. Horses are popular with the public and are sufficiently imposing to control crowds effectively.
16. Chief Tom Younce of N.C. State University's Police Department contacted Chief Tom Moss of the Garner Police Department by email dated September 26, 2007. He inquired whether Officer Taylor would be allowed to work the September 29, 2007 football game at N.C. State's Carter Finley Stadium on mounted patrol. Chief Younce and Chief Moss, who have known each other for many years, corresponded and agreed that the work Officer Taylor performed would be pursuant to the mutual aid and assistance agreement.
17. Officer Taylor received an email from Sergeant McIver, his direct supervisor, indicating that the mounted patrol duty had been approved and congratulating him on a job well done in developing the unit. Sergeant McIver indicated that Officer Taylor would receive overtime pay and that he did not need to complete a secondary employment application for the work.
18. Officer Taylor worked the N.C. State game on September 29. He was given *Page 7 
personnel paperwork to complete at N.C. State and was eventually paid $30.00 per hour for his 12-hour shift. He did not receive overtime from the Garner Police Department. Chief Moss approved the payment by N.C. State. He believed that the full payment of $30.00 per hour by N.C. State without payroll deductions from the town of Garner would result in increased payments to Officer Taylor. Chief Moss wanted to compensate Officer Taylor for the increased cost associated with the mounted unit, most of which were born by the mounted officers.
19. Officer Taylor's participation at the game on September 29 demonstrates his deployment was envisioned to permit use of law enforcement powers under the mutual aide agreement as, in addition to providing security at the gate, Officer Taylor responded to a service call involving an assault.
20. The twelve-hour shift at N.C. State included a break for the horses and riders after about six hours. The horses would then be watered so that they could prepare to stand for several hours at the gates for the conclusion of the game.
21. Although Officer Taylor knew that his work was pursuant to the mutual aid agreement and he had been informed that the Town of Garner would pay him overtime, he was asked to complete a secondary employment request form following the first game. He completed the request noting that he would be working the remainder of the home football games at N.C. State. The request was completed on October 1. Sergeant McIver approved the request form on October 4. Chief Moss wanted Officer Taylor to receive as much pay as possible for his work given the amount of money that Officer Taylor was expending for the mounted patrol. The form was not signed by Chief Moss until October 29.
22. It was the understanding of Chief Moss and Chief Younce that all of Officer Taylor's participation at the home football games would be pursuant to the mutual aid and *Page 8 
assistance agreement. Chief Younce and Chief Moss had developed a relationship over many years of professional association. Both Chief Moss and Chief Younce understood that his email request before the September 29 game constituted an adequate written request for officers to provide temporary assistance pursuant to the June 2007 mutual aid agreement. No further communication was necessary for future games. At no point did Chief Moss believe that the mutual aid agreement was not in effect, despite the existence of the secondary employment form.
23. If the mutual aid agreement had not been in effect, Officer Taylor would not have been able to work at the October 27 game. In order to use any law enforcement powers, Officer Taylor would have to be lent to N.C. State by the town of Garner Police Department because Carter Finley Stadium is outside of the jurisdiction of the town of Garner. Both Chief Moss and Chief Younce were aware of the necessity of the mutual aid and assistance agreement for Officer Taylor's work.
24. Extra duty employment outside of the jurisdiction is not allowed absent an agreement for mutual aid and assistance and the officer being provided pursuant to that agreement. Should an officer violate the policy, he would be subject to disciplinary action, up to and including dismissal. If Officer Taylor had not had his assignment at NC State approved according to the police department own regulations and the mutual assistance agreement, he could not and would not have worked at the game. 25. On October 27, 2007, Officer Taylor reported to N.C. State under the direction of Officer Foor. Two Raleigh mounted officers were also present during the game. At about 6:15 p.m., the officers decided that the horses should be exercised so that they would be thirsty and drink in order to prepare to stand for several hours. 26. The field the officers used to run the horses had a string of light poles in it. *Page 9 
Officer Taylor ran his horse, Jimmy, toward the end of the field. Neither he nor the horse noticed the guide wire running from one pole until shortly before Officer Taylor was going to strike the pole. In order to protect his head, he grabbed onto the guide wire with his left hand. Officer Taylor was jerked from the horse's back and fell to the ground. His left thumb was detached and lay inside his left hand. Officer Taylor also sustained lacerations on his hand and little finger as well as bruising on his right arm.
27. The other officers rendered assistance. Officer Taylor was taken by a Wake County deputy sheriff to Rex Hospital where he was rushed into emergency surgery, which was performed by Dr. Joel Krakauer, an orthopedic surgeon. Officer Taylor's thumb was reattached. After the five-hour surgery on October 27, 2007, Officer Taylor was discharged on November 6, 2007.
28. Defendant Town of Garner filed a Form 19 on November 19, 2007 stating that plaintiff was injured "while working mutual aid" at an N.C. State football game.
29. Officer Taylor had additional surgery on November 19, 2008, to remove gangrenous tissue. However, the reattachment failed, and Officer Taylor had amputation surgery on December 3, 2007. Further surgery to deepen the web space took place on March 13, 2007.
30. Officer Taylor's thumb was amputated at the joint closest to the hand, resulting in a complete loss of the thumb. Additional surgery was performed on Officer Taylor's forearm to provide a section of skin in order to cover the remainder of the thumb. The graft surgery has left a permanent scar on Officer Taylor's forearm, approximately six inches long. The scar is raised, discolored, and is approximately a half-inch wide.
31. The stump of the amputated thumb is constantly sensitive. Officer Taylor indicates that his pain is about a two on a scale of one to ten. The skin of the stump is *Page 10 
discolored. He is able to grasp and lift. However, he does get comments on the appearance of his hand. Often co-workers or his superiors will comment on the fact that he is a nine-fingered officer.
32. Officer Taylor was temporarily totally disabled from October 28, 2007 through May 26, 2008. He was able to qualify for his firearm certification and return to his duties as a patrol officer on May 27, 2008.
33. Plaintiff's medical treatment was reasonably medically necessary in order to treat the effects of plaintiff's injury by accident.
34. The Award of the Deputy Commissioner in the instant case established Plaintiff's right to both disability benefits and payment of medical expenses. Defendants brought forth an appeal and the Award below order the insurer to make or to continue payments of benefits, including compensation for medical expenses.
 ***********
Based upon the foregoing Stipulations, Findings of Fact, and Conclusions of Law, the Full Commission enters the following additional:
 CONCLUSIONS OF LAW
1. Because plaintiff was working at N.C. State University on October 27, 2007, pursuant to a mutual aid agreement, the Town of Garner is liable for his compensable injury pursuant to N.C. Gen. Stat. § 160A-288.
2. On October 27, 2007, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer Town of Garner. N.C. Gen. Stat. § 97-2(6).
3. As a result of plaintiff's compensable injury by accident, he was rendered *Page 11 
temporarily totally disabled from October 28, 2007 through May 26, 2008. N.C. Gen. Stat. § 97-29.
4. As a result of plaintiff's compensable injury by accident, plaintiff is entitled to receive compensation at a rate of $754.00 per week for the period of his total disability. N.C. Gen. Stat. § 97-2(5).
5. Plaintiff is entitled to receive medical treatment that would effectuate a cure, give relief, or lessen plaintiff's period of disability as related to his compensable injury by accident on October 27, 2007. N.C. Gen. Stat. § 97-25.
6. Plaintiff is entitled to receive 75 weeks of compensation at the rate of $754.00 for the total loss of his thumb. N.C. Gen. Stat. § 97-31(1).
7. Plaintiff is entitled to receive $5,000 for the permanent damage to his skin. N.C. Gen. Stat. § 97-31(24).
8. Plaintiff is entitled to receive attorneys' fees for the costs of this appeal. N.C. Gen. Stat. § 97-88.
 ***********
Based on the foregoing Findings of Facts and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Defendant Town of Garner shall pay compensation for disability at the rate of $754 per week from October 27, 2007 through May 27, 2008 in one lump sum, subject to the attorney fee provided for hereinafter.
2. Defendant Town of Garner shall pay 75 weeks of compensation at the rate of $754 per week for the total loss of plaintiff's thumb, beginning as of the date of maximum *Page 12 
medical improvement, subject to the attorney fee provided for hereinafter.
3. Plaintiff is awarded $5,000 for the permanent damage to his skin, subject to the attorney fee provided for hereinafter. N.C. Gen. Stat. § 97-31(24).
4. A reasonable attorney fee in the amount of twenty-five percent of compensation due plaintiff in Paragraphs one through three of this Award hereby approved for plaintiff's counsel, and shall be deducted from the amounts owed to plaintiff and be paid directly to plaintiff's counsel. Compensation payable in the future shall be paid by deducing an amount equivalent to every fourth check due to plaintiff and directly paying said sums to plaintiff's counsel.
5. Defendant Town of Garner shall pay all medical expenses incurred or to be incurred by plaintiff as a result of his compensable injury by accident of October 27, 2007, to effect a cure, provide relief or lessen plaintiff's period of disability. Treatment recommended or provided by Dr. Krakauer is reasonably and has been necessary in order to effectuate a cure, give relief, or lessen plaintiff's period of disability as relating to his compensable injury by accident.
6. Plaintiff's claim for benefits against N.C. State is DISMISED WITH PREJUDICE.
7. Defendant Town of Garner and the North Carolina League of Municipalities shall bear the costs. Defendant North Carolina League of Municipalities shall pay plaintiff's counsel reasonable attorneys' fees incurred in this appeal before the Full Commission. Plaintiff's counsel shall submit to the Full Commission an itemized bill detailing the services and hours expended on the appeal of this action and a proposed order within 30 days of the issuance of this Opinion and Award.
This the ___ day of June, 2009 *Page 13 
 S/___________________
 DANNY LEE McDONALD
 COMMISSIONER
CONCURRING:
 S/___________________ LAURA K. MAVRETIC COMMISSIONER
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER